United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SYMANTEC CORPORATION,<br><br>        Plaintiff,<br><br>   v.<br><br>LOGICAL PLUS, INC., *et al.*,<br><br>        Defendants.<br>_____/ | No. C 06-7963 SI<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** |

On October 16, 2009, the Court heard oral argument on plaintiff's motion for summary judgment on the trademark infringement, false designation of origin, and copyright infringement claims. Having considered the arguments of counsel and the papers submitted, the Court GRANTS in part and DENIES in part plaintiff's motion.

**BACKGROUND**

Plaintiff Symantec Corporation designs, manufactures, publishes and distributes software for personal computers, including several versions of Norton SystemWorks ("NSW"). Brandon Decl. ¶¶ 2-11. Symantec also manufactures, publishes and distributes Norton AntiVirus, Norton Utilities, Norton Internet Security, Norton Ghost, and pcAnywhere. *Id*.

Symantec does not directly sell its software or component parts to end-user consumers. Instead, Symantec sells its software to authorized distributors who resell the product. *Id*. ¶ 16. When customers interested in purchasing Symantec's products visit the Symantec website and inquire about purchasing the products, they are redirected to a site owned, operated and maintained by a third party, Digital River. Symantec licenses to Digital River the use of its name and the right to sell its software to end-users over

the Internet. *Id.*

Symantec contracts with a third party, DisCopy Labs ("DCL") for the manufacture of NSW software within the United States. *Id.* ¶ 17. As part of this process, Symantec supplies the digital art work for silkscreen manufacturing, and the computer program master to DCL, who then ensures that the CDs and associated components are reproduced according to Symantec's standards. *Id.* DCL puts the CDs and associated components along with manuals in packaging designed by Symantec, and shrink wraps the boxes. *Id.* DCL receives product shipping instructions from Symantec, then palletizes and ships the products to distributors. *Id.* Any NSW software disk manufactured for sale in the United States by an entity other than DCL and those entities authorized by DCL is not an authorized product of Symantec. *Id.* ¶ 20.

Defendant Logical Plus is a New York corporation, and defendant Joseph Chang ("Chang") is the principal owner and operator of Logical Plus. Shuttle Products ("Shuttle") is a California corporation, and defendant Yen Nelson Yu is the owner and operator of Shuttle Products. Gonzales Suppl. Decl. at 25-26; Deposition of Yen Nelson Yu ("Yu Depo") at 41-42. Logical Plus sells software and other products through its website, www.logicalplus.com. *Id.* ¶ 28. Marc Brandon, Director of Global Brand Protection for Symantec, states in his declaration that Symantec received inquiries from a number of consumers concerning purported Norton and Symantec software that they had purchased, without retail packaging, from Logical Plus. *Id.* ¶ 24. Some of those consumers sent the software they purchased from Logical Plus to Symantec, and Symantec determined that the software was counterfeit. *Id.* ¶¶ 24-37; *see generally* Freedman Decl.

Symantec also retained Jodie Pavey, an outside licensed private investigator, to conduct test purchases. Brandon Decl. ¶ 31; Pavey Decl. ¶ 5. Between February 2004 and October 2005, Ms. Pavey purchased several Norton software products from defendants. Brandon Decl. ¶ 31; Pavey Decl. ¶¶ 5-11, ¶ 17. Brandon states that "[t]he CDs were shipped in sleeves without any retail packaging, manuals or other material that would accompany a genuine retail Symantec product." Brandon Decl. ¶ 32. Ms. Pavey forwarded the CDs to Symantec, and "[e]xamination of the evidence revealed that each of the CDs . . . is counterfeit." *Id.* ¶ 33; *see also* Freedman Decl. ¶ 10 (there is a "high likelihood, far beyond a reasonable probability, that all of the discs are counterfeit").

On or about February 14, 2005, Symantec sent written notice to defendants informing them that they were selling counterfeit copies of Symantec software products. Brandon Decl. ¶ 38, Ex. 12. Symantec demanded that defendants cease and desist from further sales of counterfeit Symantec products. *Id.* On or about February 14, 2005, defendant Joseph Chang sent an e-mail to Symantec stating that "We have taken all Symantec related softwares [sic] out of our website and stopped selling all Symantec softwares [sic]." Brandon Decl. Ex. 13. Defendant Chang further represented that he had purchased only "5 to 22" pieces of Symantec software from vendors at computer trade shows, and had obtained no invoices from the vendors. *Id.* Chang also stated that "We purchased these softwares based on the goodwill of the vendors of trade shows with no knowledge of counterfeit products. Please advise." *Id.*

At his deposition, defendant Chang testified that he was responsible for purchasing for Logical Plus. Chang also admitted that he lied in his February 14, 2005 e-mail response to Symantec, and that he lied to protect his friend, Oscar Sun, from whom Logical Plus purchased the software at issue:

> Q   So you would agree with me that when you said there was only five to 22 softwares, that was a lie; right?
>
> A   Yes.
>
> Q   And then you say you bought them from the local computer trade shows.
>
> A   That's not true.
>
> Q   That's a lie, too; right?
>
> A   Yes.
>
> . . .
>
> Q   So you lied about that. Is there a reason why you lied about that?
>
> A   I was protecting as a friend.

Chang Depo. at 155:7-24; 160:24-161:4 (attached as Ex. 202 to Munson Decl.). Chang also admitted that he falsely told Symantec that he had paid cash for the products and had no receipts. *Id.* at 156:23-157:7.

Chang testified that in fact Logical Plus purchased the products from V-Micro,[1] which was owned by Oscar Sun.[2] *Id*. at 36:2-24. Chang testified that after he received the cease and desist letter from Symantec, he contacted Sun, who told him that V-Micro was an authorized distributor of Symantec products, and that the products were not counterfeit. *Id*. at 99, 111:24-112:5. Chang also testified that Sun told him that he (Sun) would talk to Symantec and that Logical Plus should stop selling Symantec products for a period of time. *Id*. 98:2-12, 156:4-8. Chang testified that he never asked Sun where he obtained his Symantec products, *id*. 36:12-14; never asked Sun for any documentation to prove that the Symantec product he was selling was legitimate, *id.* 98:19-23; and that he never made any efforts, beyond the phone call to Sun, to ascertain whether the Symantec products that Logical Plus had been selling were legitimate, *id*. 99:3-8. Chang also testified that he does not know whether, in fact, Sun actually contacted Symantec in response to the cease and desist letter. *Id*. 160:7-18. Nevertheless, within a few weeks or a few months after receiving Symantec's cease and desist letter, Logical Plus resumed selling Symantec products. *Id*. 156:9-22. According to plaintiff, in response to discovery requests defendants produced over approximately 150 sales invoices reflecting sales of 1,692 purported Norton and Symantec products after February 14, 2005. Munson Decl. ¶ 12, Ex. 204.[3]

Defendant Yu, the owner and operator of Shuttle, is the brother-in-law of defendant Chang. Yu, through Shuttle, provided email addresses that Chang used for the Logical Plus enterprise. Chang Depo. at 10:46:14-22. It is unclear, however, to what extent these email addresses were used, or whether there were other email addresses used at the same time. Therefore, it is unclear to what extent the Logical Plus business relied on the use of those email addresses, or for what period of time they were used.

Plaintiff filed the complaint on December 29, 2006. Plaintiff originally moved for summary

---

[1] The papers and deposition testimony alternately refer to V-Micro and Viewmicro.

[2] *See* Munson Decl. ¶ 15.

[3] The Munson declaration states that "defendants" produced approximately 150 invoices, and that Mr. Munson, a law clerk with Baute & Tidus LLP, reviewed those documents and determined that the invoices reflected sales of 1,692 units of Symantec products after Symantec's February 14, 2005 cease and desist letter. Munson Decl. ¶¶ 12-13. Plaintiff has attached "illustrative" invoices, which are all from Logical Plus. Thus, it is unclear from the Munson declaration and supporting evidence whether all of the invoices show sales from Logical Plus, or whether any of the invoices are connected to the other corporate defendants.

4

judgment against all defendants in January 2008. On February 8, 2008, before the motion was heard, defendants filed a notice that Logical Plus had filed for bankruptcy the same day. On February 20, 2008, the Court issued an order staying action and denying without prejudice plaintiff's motion for summary judgment. By order filed September 8, 2009, the Court granted plaintiff's motion to sever Logical Plus and lift the stay as to the solvent defendants. Plaintiff renewed the motion for summary judgment as to defendants Chang, Yu and Shuttle Products, and the parties submitted supplemental summary judgment briefs.

## LEGAL STANDARD

Summary adjudication is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

In a motion for summary judgment, "[if] the moving party for summary judgment meets its initial burden of identifying for the court those portions of the materials on file that it believes demonstrate the absence of any genuine issues of material fact, the burden of production then shifts so that the non-moving party must set forth, by affidavit or as otherwise provided in Rule 56, specific facts showing that there is a genuine issue for trial." *See T.W. Elec. Service, Inc., v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)). In judging evidence at the summary judgment stage, the Court does not make credibility determinations or weigh conflicting evidence, and draws all inferences in the light most favorable to the non-moving party. *See T.W. Electric*, 809 F.2d at 630-31 (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986)); *Ting v. United States*, 927 F.2d 1504, 1509 (9th Cir. 1991). The evidence presented by the parties must be admissible. Fed. R. Civ. P. 56(e). Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. *Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

**DISCUSSION**

**I.     Defendant Chang**

As an initial matter, plaintiff argues that liability for the alleged counterfeit sales should attach to Joseph Chang, because as the owner and operator of Logical Plus, he was a direct participant in the infringing activity of the now-bankrupt defendant. Defendant argues that he was the unknowing victim of the true perpetrator of the counterfeiting, Oscar Sun.[4]

A corporate "officer or director is, in general, personally liable for all torts which he authorizes or directs or in which he participates, notwithstanding that he acted as an agent of the corporation and not on his own behalf." *Murphy Tugboat Co. v. Shipowners & Merchants Towboat Co.*, 467 F. Supp. 841, 852 (N.D. Cal. 1979), *aff'd sub nom. Murphy Tugboat Co. v. Crowley*, 658 F.2d 1256 (9th Cir. 1981), *cert. denied*, 455 U.S. 1018 (1982); *Transgo, Inc. v. Ajac Transmission Parts Corp.*, 768 F.2d 1001, 1021 (9th Cir. 1985); *Coastal Abstract Service, Inc. v. First American Title Ins. Co.*, 173 F.3d 725, 734 (9th Cir. 1999). Because Joseph Chang was the owner and operator of Logical Plus, he is directly liable for the trademark, false designation of origin, and copyright claims.

Chang's defense that he was the unwitting victim of Oscar Sun, and did not know that the merchandise he sold was counterfeit, is unconvincing. Plaintiff argues that prior to the cease and desist letter, Chang should have known that the merchandise was counterfeit based on the lack of retail purchasing and price. After the cease and desist letter, however, Chang had no reasonable basis to rely on Sun's assurances that the merchandise was authentic. Chang's claims that he was unaware that the CDs he sold were counterfeit cannot be true for the period after he received Symantec's cease and desist letter.

Chang also asserts that his damning deposition testimony would have been more accurate with an interpreter. However, Chang does not point to any specific instance of his testimony that he claims is inaccurate. Defendants could have arranged for a translator for Mr. Chang's deposition, and chose not to. Indeed, Mr. Chang testified that he has spoken English for 20 years, uses English regularly in

---

[4] Neither party has produced definitive proof of how many counterfeit sales took place. Plaintiff argues that there were "thousands" of counterfeit sales, even after the cease and desist letter. Supplemental Reply at 2. Plaintiff has also alleged that there were invoices for 1,692 sales after the letter. Munson Decl. ¶¶ 12-13. Defendants only admit the purchases that plaintiff's agent made.

6

his business, and that he felt comfortable using English at his deposition. Chang Depo. at 5:11-23. Furthermore, a review of Mr. Chang's deposition transcript shows that Mr. Chang clearly understood the questions he was asked. *See e.g. id.* at 178:9-15 (Chang informing questioner that question had previously been asked).

Mr. Chang has attached an affidavit to his Supplemental Opposition stating he wished to "clarify those misrepresentations" due to being deposed "without the aid of an interpreter." Chang Decl. at 2. Chang does not deny any of his deposition statements, nor does he deny lying to plaintiff. Instead, he simply attempts to explain why he lied to plaintiff. *See id.* ¶ 8. Accordingly, the Court finds that Chang's deposition testimony is admissible.

### A.     Trademark infringement

"To prevail on its trademark infringement claim, [Symantec] must show that: (1) it has a valid, protectable trademark, and (2) that [defendants'] use of the mark is likely to cause confusion." *Applied Information Sciences Corp. v. eBAY, Inc.*, 511 F.3d 966, 969 (9th Cir. 2007); *see Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1047, 1053 (9th Cir. 1999). "There are three ways in which [Symantec] may establish that it has a protectable interest: (1) it has a federally registered mark in goods or services; (2) its mark is descriptive but has acquired a secondary meaning in the market; or (3) it has a suggestive mark, which is inherently distinctive and protectable." *Applied Information*, 511 F.3d at 970. Symantec holds federally registered marks in the goods at issue, and there is undisputed evidence that defendants Logical Plus and Joseph Chang used the trademarks when they sold purported Symantec products. Thus, the only question remaining is whether defendants' use is likely to cause confusion.

"A likelihood of confusion exists when customers viewing a mark would probably assume that the product or service it represents is associated with the source of a different product or service identified by a similar mark." *Au-Tomotive Gold, Inc. v. Volkswagen of America, Inc.*, 457 F.3d 1062, 1075-76 (9th Cir. 2006) (internal citations and quotations omitted). "The Ninth Circuit employs an eight-factor test (the '*Sleekcraft*' factors) to determine the likelihood of confusion: (1) strength of the mark(s); (2) relatedness of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5)

7

marketing channels; (6) degree of consumer care; (7) defendant's intent; (8) likelihood of expansion." *Id.* at 1076 (citation omitted). The factors are not a rigid test however; the Court may apply them as it sees fit. *Id.*

The *Sleekcraft* factors favor finding a likelihood of confusion in this case. As for the first factor, the marks were strong enough that Logical Plus sold products based on the marks; indeed, it was because of the strength of the mark that Logical Plus *could* sell counterfeit products. As to the second factor, the products were not just similar, they were identical. Logical Plus sold counterfeit copies of Symantec products, so the products were more than related. As to the third factor, the mark was similar enough that consumers who bought the counterfeit product did not suspect they had purchased a forgery. There is evidence that consumers were actually confused, in that plaintiff only found out about the counterfeit sales through consumers contacting Symantec for support on the counterfeit products they had purchased. As to the fifth factor, plaintiff, through its authorized vendors, also sells its products via the internet, so the same channels are used. As to the sixth factor, consumers can exercise extreme care and still purchase the counterfeit product, which they cannot inspect prior to purchase online. Seventh, the defendant's intent here was actually to confuse consumers into purchasing the counterfeit products. Consumer confusion was the goal, because without it, Logical Plus would not have sold a single piece of software. It was marketed as plaintiff's software. As to the eighth factor, it is unclear whether the expansion into other markets was likely for either plaintiff or defendant. Thus the eighth factor is the only one that is even moderately neutral; the first seven all favor finding confusion to be likely. The factors are not to be applied mechanically, but here they overwhelmingly support finding confusion to be likely.

For these reasons, the Court GRANTS plaintiff's motion for summary judgment on the trademark infringement claim as to defendant Chang. *See In re Vuitton Et Fils S.A.*, 606 F.2d 1, 4 (2d Cir. 1979) ("Here, we believe that such a likelihood of product confusion exists. The allegedly counterfeit Vuitton merchandise is virtually identical to the genuine items. Indeed, the very purpose of the individuals marketing the cheaper items it so confuse the buying public into believing it is buying the true article."); *see also Nissan Motor Co. v. Nissan Computer Corp.*, 378 F.3d 1002, 1019 (9th Cir. 2004) (affirming summary judgment where the marks were "legally identical," the goods at issue were

8

related, and the marketing channels overlapped).

### B.      False designation of origin

Under Section 43(a) of the Lanham Act, Symantec must prove that defendants: (1) used a false designation of origin, (2) in interstate commerce, (3) in connection with goods or services, (4) the false designation is likely to cause confusion or deception as to the origin, sponsorship or approval of defendants' goods, and (5) damages. 15 U.S.C. § 1125(a)(1)(A); *see* McCarthy on Trademarks and Unfair Competition, § 27:13 (Fourth Ed.); *see also Vision Sports, Inc. v. Melville Corp.*, 888 F.2d 609 (9th Cir. 1989). The standard for violation of Section 43(a) is the same as that for trademark infringement: "Whether we call the violation infringement, unfair competition or false designation of origin, the test is identical – is there a 'likelihood of confusion'"? *New West Corp. v. N.Y.M. Co. of California*, 595 F.2d 1194, 1201 (9th Cir. 1979); *see also Abercrombie & Fitch Co. v. Moose Creek, Inc.*, 486 F.3d 629, 633 (9th Cir. 2007) ("The core element of trademark infringement is the likelihood of confusion, i.e., whether the similarity of the marks is likely to confuse customers about the source of the products.") (internal quotations omitted). For the reasons stated above, the Court finds that there is a substantial likelihood of confusion, and thus GRANTS plaintiff's motion for summary judgment for violation of Section 43(a) of the Lanham Act against defendant Chang.

### C.      Copyright infringement

Symantec argues that it is entitled to summary judgment on the copyright claims because it owns copyrights to Norton AntiVirus and Norton Internet Security, and their component programs, and defendants distributed these programs without authorization. "A plaintiff bringing a claim for copyright infringement must demonstrate (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Funky Films, Inc. v. Time Warner Entertainment Co., L.P.*, 462 F.3d 1072, 1076 (9th Cir. 2006) (internal quotations omitted). *See Feist Publications, Inc. v. Rural Telephone Service Co., Inc.*, 499 U.S. 340, 361 (1991). "Copying" is shorthand for the infringing of any of the copyright owner's five exclusive rights. *S.O.S., Inc. v. Payday, Inc.*, 886 F.2d 1081, 1085 n. 3 (9th Cir.1989). The owner of a copyright has the exclusive right to "distribute copies or phonorecords

9

of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending," or to authorize another party to do so. 17 U.S.C. § 106(3). *See A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1013 (9th Cir. 2001). Normally, the copyright holder does not have evidence of direct copying, but must prove through indirect evidence (access and substantial similarity) that copying occurred. Where, as here, however, there is direct evidence of copying, that is the end of the case. *See M. Kramer Mfg. Co., Inc. v. Andrews*, 783 F.2d 421, 445 (4th Cir. 1986).

Here, plaintiff has submitted undisputed evidence of it's copyright in the software Norton AntiVirus, Norton Internet Security, Norton Utilities, Norton Ghost, and CleanSweep. *See* Brandon Decl. ¶ 15, Ex. 9. It is also undisputed that defendant Chang sold counterfeit copies of this software. *See* Freedman Decl. ¶ 10. After the cease and desist letter from Symantec, defendant Chang knew or should have known that he was selling counterfeit copies of this software. *See* Brandon Decl. ¶ 38, Ex. 12. As has already been discussed above, Chang is directly liable for the acts committed through Logical Plus as its owner and operator. Therefore, plaintiff is entitled to summary judgment against defendant Chang for direct infringement of its copyrights.

### D. Willfulness

Plaintiff's counsel argued at the hearing that defendant Chang's infringement was willful. No element of willfulness is necessary for a finding of trademark infringement. *Saxlehner v. Siegel-Cooper Co.*, 179 U.S. 42, 42-43 (1900). Likewise, willfulness is not required for a finding of copyright infringement. *See* 17 U.S.C.A. § 504(c)(1-2) (allowing different calculation of damages when the copyright infringement is willful). However, a finding of willfulness increases the calculation of statutory damages under both the Lanham Act and the Copyright Act. *See* 15 U.S.C. § 1117(c)(2); 17 U.S.C. § 504(c)(2). A "finding of willfulness in this context can be based on either intentional behavior, or merely reckless behavior." *In re Barboza*, 545 F.3d 702, 707 (9th Cir. 2008) (quotations omitted).

The undisputed evidence shows that defendant Chang had actual knowledge that his merchandise was counterfeit after he received plaintiff's cease and desist letter, and yet he continued to infringe. Furthermore, his response to the letter – lying to protect himself and his supplier – indicates that it is very likely that he knew he was selling counterfeit merchandise before he even received the letter.

10

Accordingly, the Court finds that defendant Chang engaged in willful infringement after receipt of the cease and desist letter. The record is more equivocal for the time period prior to the cease and desist letter. The evidence suggests that even if defendant Chang did not have actual knowledge that the merchandise was counterfeit, his behavior was reckless because he was purchasing and selling purported Symantec software at prices that were sufficiently below market value to arouse suspicion. However, given the state of the record, the Court cannot conclude on summary judgment that Chang's conduct prior to the cease and desist letter was reckless.

## II.   Defendants Yen Nelson Yu and Shuttle Products, Inc.
### A.   Trademark infringement

Plaintiff argues that liability for trademark infringement should also attach to defendants Yu and Shuttle Products, Inc., for their part in providing the email accounts that defendants Chang and Logical Plus used to sell counterfeit merchandise. Plaintiff argues that Shuttle hosted the website that Logical Plus sold its merchandise through, and that Shuttle supplied to Logical Plus products that Logical Plus then sold. Defendants assert that Shuttle only provided an email address that Logical Plus used for a limited period of time to correspond with clients, and that it was only one of six different email addresses used. Neither party has introduced evidence that would clarify the exact nature of Yu's relationship with Chang's business, apart from generally agreeing that Chang used an email address hosted by Shuttle Products. In addition, neither plaintiff nor defendants explain to what extent Logical Plus used the email address Shuttle provided in its business, how often other email addresses were used, nor how many sales of allegedly infringing materials occurred through the use of this email address.

"To be liable for contributory trademark infringement, a defendant must have (1) intentionally induced the primary infringer to infringe, or (2) continued to supply an infringing product to an infringer with knowledge that the infringer is mislabeling the particular product supplied." *Perfect 10, Inc. v. Visa Intern. Service Ass'n*, 494 F.3d 788, 807 (9th Cir. 2007) (internal quotation marks omitted); *see Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S. 844, 855 (1982). "When the alleged direct infringer supplies a service rather than a product, under the second prong of this test, the court must 'consider the extent of control exercised by the defendant over the third party's means of infringement.' For liability

11

to attach, there must be '[d]irect control and monitoring of the instrumentality used by a third party to infringe the plaintiff's mark.'" *Perfect 10*, 494 F.3d at 807 (citing *Lockheed Martin Corp. v. Network Solutions, Inc.*, 194 F.3d 980, 984 (9th Cir. 1999)). There has been no evidence that Yu or Shuttle intentionally induced Chang to infringe Symantec's trademarks. To constitute contributory infringement, Yu and Shuttle's contributions would be in the form of supplying a service. However, there is no evidence that there was "direct control and monitoring" of the email addresses that Chang was using, and so no evidence to support contributory trademark infringement on the part of defendants Yu and Shuttle.

Plaintiff relies upon *Bambu Sales, Inc. v. Sultana Crackers, Inc.*, 683 F. Supp. 899, 913-14 (E.D. N.Y. 1988), *Playboy Enterprises, Inc. v. Starware Pub. Corp.*, 900 F. Supp. 438, 441-42 (S.D. Fla. 1995), and *Novell, Inc. v. Unicom Sales, Inc.*, No. C-03-2785, 2004 WL 1839117, at *17 (N.D. Cal. 2004), for the proposition that "[a]n individual defendant may be held liable for trademark and/or copyright infringement even if he is unaware that his acts will result in infringement." Plaintiff's Supplemental Brief at 8-9. All three cases, however, addressed the question of the liability of corporate officer defendants for the torts of their companies in which they directly participated. *See Bambu*, 683 F. Supp. at 913-14; *Starware*, 900 F. Supp. at 441-42; *Novell*, 2004 WL 1839117 at *17. These cases are distinguishable because Yu and Shuttle were not corporate officers of the infringing party, Logical Plus.

Plaintiff does not allege another basis for liability to attach to Yu and Shuttle, and does not explain nor offer evidence of either Yu's or Shuttle's contribution to the counterfeiting scheme beyond the provision of an email address. Therefore, the Court DENIES plaintiff's motion for summary judgment as to defendants Yu and Shuttle for trademark infringement.

### B.     Section 43(a) of the Lanham Act

For the same reasons as discussed above, plaintiff has not alleged any specific basis for liability of defendants Yu and Shuttle for the false designation of origin claim. Plaintiff appears to argue that liability should attach to Yu and Shuttle as officers of the direct infringer, or as participants in the infringement. However, plaintiff has not explained how Yu and Shuttle directed or participated in the

infringement directly, or even to what extent the email address or addresses that they provided were used in the infringement. There is insufficient proof of any theory to find Yu and Shuttle liable for the infringement at issue here. Therefore, plaintiff's motion for summary judgment on the false designation of origin claim against defendants Yu and Shuttle is DENIED.

### C. Copyright infringement

Plaintiff argues that defendants Yu and Shuttle also infringed its copyrights in their support of Chang's direct infringement. Plaintiff has not specifically argued for contributory negligence, but even if it had, summary judgment is not appropriate. "Contributory copyright infringement is a form of secondary liability with roots in the tort-law concepts of enterprise liability and imputed intent." *Perfect 10*, 494 F.3d at 194-95. The Ninth Circuit and Supreme Court have held that "a defendant is a contributory infringer if it (1) has knowledge of a third party's infringing activity, and (2) induces, causes, or materially contributes to the infringing conduct." *Id.* at 795 (internal citation and quotation omitted). In the internet context, contributory liability exists when the defendant "engages in personal conduct that encourages or assists the infringement." *Napster*, 239 F.3d at 1019 (internal citations omitted). *See Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930 (2005). *Grokster* liability exists when the defendant intentionally encourages direct infringement by "knowingly takes steps that are substantially certain to result in such direct infringement." *Perfect 10, Inc. v. Amazon.com, Inc.*, 487 F.3d 701, 727 (9th Cir. 2007) ("Amazon.com"). Therefore, "one contributorily infringes when he (1) has knowledge of another's infringement and (2) either (a) materially contributes to or (b) induces that infringement." *Perfect 10*, 494 F.3d at 795. Thus, contributory infringement in the copyright context applicable here also requires knowledge of the direct infringement. Leaving aside the second prong of the analysis, plaintiff has failed to demonstrate that defendants Yu and Shuttle had knowledge of the infringement by Chang and Logical Plus. Therefore, the motion for summary judgement on the copyright claim for contributory infringement as to defendants Yu and Shuttle is DENIED.

**III.   Miscellaneous issues**

    **A.   Notice of related action**

Defendants argue that plaintiff failed to provide notice of a related case, *Symantec Corporation v. V-Micro, Inc.*, C 08-2063 SC, which was originally filed in the Central District in 2007 and then transferred to this District in 2008. However, defendants were aware of the V-Micro case, as evidenced by the November 8, 2007 joint case management conference statement, which mentioned the V-Micro case. If defendants believed that the case was related, defendants were free to file a notice of related case. *See* Civ. Local Rule 3-12(b). In any event, defendants fail to explain how the V-Micro case has any bearing on the motion for summary judgment.

    **B.   Sanctions**

Plaintiff argues that defendants should be precluded from "any further opposition or defense" in this case due to their failure to pay monetary sanctions ordered by Magistrate Judge Brazil. The Court declines to impose such sanctions, but orders defendants to pay the outstanding monetary sanctions no later than **November 20, 2009**.

    **3.   Notice of deposition of Oscar Sun**

Defendants also raise a number of arguments about the deposition of Oscar Sun, which took place in the V-Micro case. Defendants assert that they did not have notice of that deposition, and thus that it is improper for plaintiff to introduce Sun's deposition testimony in this case. Plaintiff argues that defendants had actual notice of the deposition of Oscar Sun, and that defense counsel chose not to attend. Because this order does not rely on any deposition testimony from Mr. Sun, the Court finds it unnecessary to resolve the disputed factual question of whether defendants were provided notice of Mr. Sun's deposition.[5]

---

[5] For the same reason, the Court denies as unnecessary defendants' request that they be permitted to depose Mr. Sun in order to "oppose the testimony presented" in connection with the summary judgment motion. Supplemental Opposition at 2. If defendants wish to take Mr. Sun's deposition as part of defendants' discovery, they may do so.

## CONCLUSION

For the foregoing reasons and for good cause shown, the Court hereby GRANTS in part and DENIES in part plaintiff's motion for summary judgment.  (Docket No. 45).

**IT IS SO ORDERED.**

Dated: October 20, 2009

SUSAN ILLSTON
United States District Judge