IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SYMANTEC CORPORATION, | No. C 06-7963 SI |
| Plaintiff, | **ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AS TO DAMAGES AGAINST DEFENDANT JOSEPH CHANG AND MOTION FOR FEES AND COSTS AGAINST JOSEPH CHANG** |
| v. | |
| LOGICAL PLUS, INC., *et al.*, | |
| Defendants. | |

On June 4, 2010, the Court held a hearing on plaintiff's motion for summary judgment as to damages against defendant Joseph Chang. For the reasons set forth below, plaintiff's motion is GRANTED IN PART.

**BACKGROUND**

Plaintiff Symantec Corporation designs, manufactures, publishes and distributes software for personal computers, including several versions of Norton SystemWorks ("NSW"). Symantec also manufactures, publishes and distributes Norton AntiVirus, Norton Utilities, Norton Internet Security, Norton Ghost, and pcAnywhere. *Id*. These Symantec products bear one or more of Symantec's registered trademarks, and contain copyrighted material. Defendant Logical Plus is a New York corporation, and defendant Joseph Chang ("Chang") is the principal owner and operator of Logical Plus.

In an order filed October 20, 2009, the Court granted summary judgment in favor of plaintiff Symantec and against defendant Chang on Symantec's Lanham Act claims for trademark infringement

and false designation of origin, and claim for infringement under the Copyright Act.[1] As relevant here, the Court held that the undisputed evidence showed that Logical Plus and Chang sold counterfeit Symantec products, and that Logical Plus and Chang continued to sell counterfeit products even after Symantec sent Chang a cease and desist letter on February 14, 2005. Logical Plus and Chang purchased the counterfeit products from V-Micro, which was owned by Oscar Sun. The Court held, *inter alia*,

> Chang's defense that he was the unwitting victim of Oscar Sun, and did not know that the merchandise he sold was counterfeit, is unconvincing. Plaintiff argues that prior to the cease and desist letter, Chang should have known that the merchandise was counterfeit based on the lack of retail purchasing and price. After the cease and desist letter, however, Chang had no reasonable basis to rely on Sun's assurances that the merchandise was authentic. Chang's claims that he was unaware that the CDs he sold were counterfeit cannot be true for the period after he received Symantec's cease and desist letter.

October 20, 2009 Order at 6:15-21.

The Court also held that defendant Chang engaged in willful infringement after he received Symantec's February 14, 2005 cease and desist letter:

> The undisputed evidence shows that defendant Chang had actual knowledge that his merchandise was counterfeit after he received plaintiff's cease and desist letter, and yet he continued to infringe. Furthermore, his response to the letter – lying to protect himself and his supplier[2] – indicates that it is very likely that he knew he was selling counterfeit merchandise before he even received the letter. Accordingly, the Court finds that defendant Chang engaged in willful infringement after receipt of the cease and desist letter. The record is more equivocal for the time period prior to the cease and desist letter. The evidence suggests that even if defendant Chang did not have actual knowledge that the merchandise was counterfeit, his behavior was reckless because he was purchasing and selling purported Symantec software at prices that were sufficiently below market value to arouse suspicion. However, given the state of the record, the Court cannot conclude on summary judgment that Chang's conduct prior to the cease and desist letter was reckless.

October 20, 2009 Order at 10:25-11:7.

Symantec now moves for damages against Chang, as well as a ruling that Chang is liable for its

---

[1] The Court incorporates that order by reference. *See* Docket No. 80.

[2] Chang responded to Symantec's cease and desist letter in an email dated February 14, 2005. In that email, Chang stated, *inter alia*, that "We have taken all Symantec related softwares [sic] out of our website and stopped selling all Symantec softwares [sic]." Brandon Decl. Ex. 13 (Docket No. 64). Defendant Chang further represented that he had purchased only "5 to 22" pieces of Symantec software from vendors at computer trade shows, and had obtained no invoices from the vendors. *Id.* Chang also stated that "We purchased these softwares based on the goodwill of the vendors of trade shows with no knowledge of counterfeit products. Please advise." In his deposition in this case, Chang admitted that that he lied about the amount of software purchased, the fact that he did not have any invoices or receipts, and that he purchased the software from vendors at trade shows.

2

attorneys' fees and costs. Symantec is prepared to file a motion for attorneys' fees and costs with supporting documentation if the Court exercises its discretion and holds that Symantec is entitled to fees and costs pursuant to the Copyright Act.

**DISCUSSION**

**I.    Statutory damages**

Both the Lanham Act and the Copyright Act provide for either actual or statutory damages. *See* 15 U.S.C. § 1117 (Lanham Act); 17 U.S.C. § 504 (Copyright Act). Symantec is seeking a total of $2,113,687.20 in statutory damages under both statutes. "A plaintiff is entitled to a separate award of statutory damages under both the Copyright Act and the Lanham Act where the defendant's conduct simultaneously infringe[s] the plaintiff's copyright and its trademark." *In re Mann*, 410 B.R. 43, 49 (C.D. Cal. 2009) (citing *Nintendo of America v. Dragon Pac. Int'l*, 40 F.3d 1007, 1011 (9th Cir. 1994)). Under the Lanham Act, a plaintiff seeking statutory damages may recover between $500 and $100,000 per counterfeit mark per type of good sold, or if the infringement is willful, up to $1,000,000 per counterfeit mark per type of good. 15 U.S.C. § 1117(c).[3] The Copyright Act provides statutory damages of between $750 and $30,000 for infringements of a copyrighted work, or up to $150,000 for a willful infringement. 17 U.S.C. § 504(c). Under both statutes, the Court has broad discretion to determine the amount of statutory damages. *See Nintendo of America*, 40 F.3d at 1010.

The Lanham Act does not provide specific guidance regarding how to determine the amount of statutory damages, and courts awarding statutory damages under the Lanham Act have often looked to the case law interpreting the similar statutory damage provision in the Copyright Act, 17 U.S.C. § 504(c). *See, e.g.*, *Philip Morris USA Inc. v. Shalabi*, 352 F. Supp. 2d 1067, 1076 (C.D. Cal. 2004); *Sara Lee Corp. v. Bags of New York, Inc.*, 36 F. Supp. 2d 161, 166 (S.D.N.Y. 1999). When awarding

---

[3] On October 13, 2008, this section was amended to increase the range of damages from $1000 to $200,000, with increased penalties of up to $2,000,000 for willful violations. *See* Pub.L. No. 110-403, 122 Stat. 4256, 4259 (2008). Other courts have held that this amendment was not intended to operate retroactively. *See Lifted Research Group, Inc. v. Behdad, Inc.*, 591 F. Supp. 2d 3, 8 n. 2 (D.D.C. 2008); *Lifted Research Group, Inc., v. Salem*, No. C-08-4497 SC, 2009 WL 1371416, at *4 n.9 (N.D. Cal. May 15, 2009). The Court agrees with these courts and uses the limits set out before the amendment.

3

1  statutory damages under the Copyright Act, courts consider restitution of profit, reparation of injury,
2  and deterrence of future infringement. *See F.W. Woolworth Co. v. Contemporary Arts*, 344 U.S. 228,
3  233 (1952); *Peer Int'l Corp. v. Pausa Records, Inc*., 909 F.2d 1332, 1336-37 (9th Cir. 1990) (affirming
4  award of maximum allowable statutory damages under the Copyright Act where plaintiff may have
5  suffered only nominal damages, in part because of deterrent effect). Courts in this district have also
6  considered whether the damages sought bear a "plausible relationship" to the plaintiff's actual damages.
7  *See Adobe Systems Inc. v. Tilley*, No. C 09-1085 PJH, 2010 WL 309249, at *5 (N.D. Cal. Jan. 9, 2010)
8  (collecting cases). For example, in *Tilley*, the court awarded $10,000 per trademark infringement where
9  there was evidence of willful infringement, but only one sale of counterfeit software containing five
10  trademarks, for a total of $50,000 in statutory damages. *Id*. at *6. In contrast, in *Adobe Systems Inc.
11  v. Taveira*, No. C 08-2436 PJH, 2009 WL 506861 (N.D. Cal. Feb. 27, 2009), the court awarded $50,000
12  per trademark infringement, for a total of $250,000 in statutory damages, where there was evidence of
13  willful infringement, and although the plaintiff only sought damages for five infringements there was
14  evidence that the number of infringements was substantially greater. *Id*. at *6.

15  Symantec has submitted undisputed evidence that Chang sold at least 1,986 infringing products
16  after receiving Symantec's February 14, 2005 cease and desist letter. Munson Decl. Ex. J, L. Symantec
17  argues that this number is conservative because in his deposition Chang claimed that he had lost a lot
18  of his records. Based on information provided by Chang, Symantec has calculated that Chang's
19  minimum profits on the post-February 14, 2005 sales are $5,846.14. *Id*. Ex. I (average prices of
20  products); Ex. M (calculations).[4] There are eight trademarks and five copyrights at issue.

21  Based upon the record in this case, the Court finds it appropriate to award $50,000 for each of
22  the eight infringed trademarks, and $50,000 for each of the five infringed copyrights, for a total of

---

[4] Symantec also asserts that prior to February 14, 2005, Chang sold at least 9,484 purported Symantec products, and that assuming Chang's profit margin during this period was similar, he realized at least $27,917.82 on those sales. Motion at 14:16-17. It is unclear from Symantec's papers when the pre-February 14, 2005 period begins, or how Symantec calculated the figure of 9,484; unlike the post-February 14, 2005 sales which are supported by exhibits, Symantec's papers do not contain citations to supporting documentation for the pre-February 14, 2005 period.

4

1  $650,000 in statutory damages.[5] These damages reflect Chang's repeated and willful infringement, the
2  injury to Symantec, and the need for deterrence. *See Microsoft Corp. v. Compusource Distributors Inc.*,
3  115 F. Supp. 2d 800, 804, 812 (E.D. Mich. 2000) (awarding statutory damages of $50,000 for each of
4  8 trademarks at issue, and $15,000 for each of 9 copyrights, for a total of $535,000, where there was
5  evidence of willful infringement and sales of 1,790 units of counterfeit software). The Court finds that
6  although the evidence of Chang's willful infringement is considerable, the amount of damages sought
7  by Symantec is too high in light of Chang's modest profits.

8  Chang argues that the Court should award damages of approximately $200 per mark for the pre-
9  February 14, 2005 period, and $5,000 per mark for the post-February 14, 2005 period, and no damages
10 under the Copyright Act. Chang continues to claim that he was "foolish" and "innocent," and that he
11 was duped by Oscar Sun. The Court has previously rejected Chang's claims, and held that Chang is
12 liable for willful infringement of Symantec's trademarks and copyrights. The record is replete with
13 evidence of Chang's infringement, and his continued assertions of innocence demonstrate that a
14 significant damages award is necessary for deterrence.

## II. Attorneys' fees and costs

Symantec also seeks a ruling that it is entitled to recover its attorneys' fees and costs for all of its claims under the Copyright Act, 17 U.S.C. § 505.[6] The Copyright Act provides that "the court may also award a reasonable attorney's fee to the prevailing party as part of the costs." *Id*. A plaintiff may

---

[5] Symantec has proposed a formula for calculating the Lanham Act damages that is based on profits, multiplied by 3 for willful infringement, then multiplied again by 2 as a deterrent, then multiplied again by the number of different products and the number of trademarks per product. *See* Motion at 15. The Court declines to adopt this formula, as it appears to inflate the number of products by counting them twice, first in the calculation of profits and again by multiplying the base amount by the number of different products. *See id*. Even if there is no duplication in Symantec's proposed formula, the Court finds it appropriate to award damages on a per trademark basis.

[6] Symantec does not seek fees pursuant to the Lanham Act because the provisions that allow recovery of attorneys' fees under that statute only apply if plaintiffs choose to pursue actual damages under 15 U.S.C. § 1117(a)-(b); *see also K & N Eng'g, Inc. v. Bulat*, 510 F.3d 1079, 1082 (9th Cir. 2007) (finding that district court abused its discretion by awarding attorneys' fees where plaintiffs sought statutory damages under § 1117(c)). Unlike the Lanham Act, the Copyright Act contains a separate provision for fees, and the award of fees is not tied to whether the plaintiff chooses to seek actual or statutory damages. *Compare* 15 U.S.C. § 1117 *with* 17 U.S.C. § 505.

5

recover attorneys' fees for non-copyright claims where copyright claims arise from the same course of conduct as the non-copyright claims. *See Traditional Cat Ass'n v. Gilbreath*, 340 F.3d 829, 833 (9th Cir. 2003). An award of attorneys' fees is discretionary. *Fogerty v. Fantasy Inc.*, 510 U.S. 517, 533 (1994). The Supreme Court has stated that several nonexclusive factors that courts should consider in making fee awards in Copyright cases include "frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Id*. at 535 n.19. Symantec argues that a fee and cost award is appropriate based on Chang's willful infringement, including his repeated lies, as well as Chang's behavior during this lawsuit. The docket reflects that Chang repeatedly refused to attend conferences and hearings, was sanctioned for those refusals, and failed to pay that sanction for over a year.

Based on the record in this case, the Court concludes that Symantec is entitled to recover its reasonable attorneys' fees and costs from Chang, and that even though plaintiff cannot independently recover fees for its Lanham Act claims, plaintiff may recover fees for these claims as "related claims" under 17 U.S.C. § 505. Plaintiff's Lanham Act and Copyright claims all arose out of the same facts, namely Chang's sales of counterfeit products containing Symantec's trademarks and copyrighted material. *See Lifted Research Group*, 2009 WL 1371416, at *6 (holding Lanham Act claims sufficiently related to Copyright Act claims because "LRG made the same arguments for its Lanham Act claims as for its Copyright claims, and the underlying facts were the same. . . . . Indeed, it would be almost impossible to differentiate the work done on LRG's different claims."). The Court's ruling that Symantec is entitled to recover its fees and costs is subject to a determination upon review of Symantec's motion for attorneys' fees that the specific fees and costs sought are reasonable.

**CONCLUSION**

For the foregoing reasons and for good cause shown, the Court hereby GRANTS IN PART plaintiff's motion for summary judgment as to damages and an entitlement to fees and costs against defendant Chang. (Docket No. 86). The Court hereby awards $50,000 for each of the eight infringed trademarks, and $50,000 for each of the five infringed copyrights, for a total of $650,000 in statutory

damages.

The Court also holds that Symantec is entitled to recover its fees and costs from defendant Chang. Symantec shall file a motion for fees and costs, with supporting declarations and documentation, by **July 9, 2010**. The motion shall be noticed for a hearing and briefed according to the schedule set forth in Civil Local Rule 7-2(a).

**IT IS SO ORDERED.**

Dated: June 4, 2010

SUSAN ILLSTON
United States District Judge